NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230152-U

NO. 4-23-0152

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 23, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| MARKUS HARVELL, | ) | No. 01CF775 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Raylene D. Grischow, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Turner and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court reversed and remanded for further proceedings, concluding defendant set forth a colorable claim of actual innocence.

¶ 2    Defendant, Markus Harvell, appeals from the trial court's judgment denying him leave to file a successive postconviction petition. On appeal, defendant argues this court should reverse and remand for further proceedings because he sufficiently set forth a claim of actual innocence based upon newly discovered evidence. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4    On August 9, 2001, 13-year-old Antonio McGrone was shot and killed at the Brandon Court housing complex (Brandon Court) in Springfield. Defendant was later arrested and charged with the first degree murder of McGrone.

¶ 5        Shortly before the shooting that resulted in McGrone's death, another shooting occurred at Brandon Court. Edwin Jones was later arrested and charged with aggravated discharge of a firearm for that shooting, a charge which was later dismissed on motion of the State due to insufficient evidence. The record indicates defendant and his trial counsel were aware of the charge brought against Edwin Jones prior to defendant's trial.

¶ 6                                A. Jury Trial

¶ 7        At defendant's trial, the evidence showed defendant, Andre Jones, and Nicholas Gates went together to Brandon Court on the evening of August 9, 2001. While at Brandon Court, a man wearing a wig, glasses, and white gloves approached a group of people, including defendant. When the group laughed at the man, the man, who was referred to as the "wig man," responded by firing a gun at defendant. The group dispersed. McGrone, who was also nearby, fled.

¶ 8        Defendant was later seen with a gun in his hand. A witness who saw defendant with the gun testified defendant told that witness not to run. Another witness, who was fleeing with McGrone following the shooting, testified he looked up and saw defendant with a gun immediately after hearing a man yell " 'who's that?' " That witness and McGrone continued to flee. Witnesses heard additional shots. McGrone was struck in the back by a bullet.

¶ 9        The witness who was with McGrone continued to flee, later coming upon defendant in a vehicle. Defendant pointed a gun out the window of the vehicle, to which the witness said, "[I]t wasn't me." The vehicle then sped away. Later that evening, the witness who was with McGrone identified defendant as the person who shot McGrone.

¶ 10       Gates and Andre Jones left Brandon Court in defendant's vehicle. Gates testified defendant stopped the vehicle and pointed a gun at a man standing on the street and said, " '[I]s it you, is it you.' " The man put up his hands and responded, " 'Ain't me, ain't me,' " and defendant

- 2 -

drove away. Days later, Gates, who had been arrested on unrelated charges, gave a statement to police indicating defendant possessed a .22-caliber revolver when they left Brandon Court and stated, "Man, I done f*** around and killed a kid." Andre Jones testified he did not see defendant with a gun, nor did he hear a second set of gunshots. In a statement to police days after the incident, when arrested on unrelated charges, Andre Jones indicated he observed defendant open and remove six empty shells from a gun's cylinder and heard him say "he needed to get rid of the clothes he was wearing" and "needed to get some money up together and get him a good lawyer."

¶ 11        At the scene of the initial shooting, police recovered five 9-millimeter cartridge cases, all of which were later revealed to have originated from the same handgun. A .22-caliber projectile was recovered from McGrone's body.

¶ 12        In closing, the State argued defendant hunted down the "wig man" after the "wig man" shot at him, a pursuit which resulted in defendant discharging a firearm and killing McGrone. Conversely, the defense argued the State had not proven defendant was the perpetrator. Neither the State nor the defense tendered second degree murder instructions.

¶ 13        After deliberations, the jury found defendant guilty of first degree murder. He was later sentenced to 50 years' imprisonment. Defendant appealed.

¶ 14                              B. Direct Appeal

¶ 15        In July 2005, this court, following a remand for proper admonishments, affirmed defendant's conviction on direct appeal. *People v. Harvell*, 4-04-0871 (July 13, 2005) (unpublished order under Supreme Court Rule 23).

¶ 16                         C. Initial Postconviction Petition

¶ 17        In June 2006, defendant filed a *pro se* postconviction petition. In his petition, defendant alleged (1) "he fired the shot that resulted in the unfortunate death of a young boy" and

(2) there was "never any intent to kill Antonio McGrone." Defendant asserted, amongst other claims, ineffective assistance based upon trial counsel's failure to seek second degree murder instructions. The trial court summarily dismissed the petition, and defendant appealed.

¶ 18 In July 2008, this court reversed the summary dismissal of defendant's postconviction petition and remanded for further proceedings. *People v. Harvell*, 4-06-0741 (July 14, 2008) (unpublished order under Supreme Court Rule 23).

¶ 19 In April 2010, defendant, through appointed counsel, filed an amended postconviction petition.

¶ 20 In January 2011, the trial court conducted an evidentiary hearing on defendant's amended postconviction petition, where it heard from both defendant and his trial counsel. Based upon the evidence presented, the court denied the petition, and defendant appealed.

¶ 21 In October 2012, this court affirmed the denial of defendant's amended postconviction petition. *People v. Harvell*, 2012 IL App (4th) 110079-U.

¶ 22                     D. Petition for Relief From Judgment

¶ 23 In June 2017, defendant filed a *pro se* petition for relief from judgment. In his petition, defendant alleged he had discovered through a freedom of information request new evidence material to his innocence, which had been wrongfully concealed from him. Defendant attached the new evidence, a redacted police statement, to his petition. The typed statement indicated it was taken on October 18, 2001, from an inmate in the Sangamon County jail. Identifying information not redacted from the statement included the inmate's date of birth, the charge for which the inmate was incarcerated, and the block where the inmate was housed. The inmate stated he had spoken with another inmate about a "shooting over at Brandon." That inmate disclosed "he got into a shootout" with another individual and the other individual was "the one

who shot the boy in Brandon right after he and [redacted] was shooting at each other." Defendant alleged the redacted police statement set forth a confession by Edwin Jones to another inmate.

¶ 24	In July 2017, the trial court denied defendant's petition for relief from judgment, finding he "state[d] no new credible evidence to support his motion." Defendant appealed.

¶ 25	In February 2020, this court affirmed the denial of defendant's petition for relief from judgment, rejecting his argument that the denial was procedurally flawed. *People v. Harvell*, 2020 IL App (4th) 170582-U.

¶ 26	E. First Motion for Leave to File a Successive Postconviction Petition

¶ 27	In November 2017, defendant, while his appeal from the denial of his petition for relief from judgment was pending, filed a *pro se* motion for leave to file a successive postconviction petition. In his motion, defendant asserted a claim of actual innocence based upon newly discovered evidence. In support of his claim, defendant relied upon the redacted police statement.

¶ 28	In February 2018, the trial court denied defendant leave to file a successive postconviction petition, finding he presented "no new arguments from the previously denied petition."

¶ 29	In October 2018, defendant moved to file a late notice of appeal, which this court denied.

¶ 30	F. Second Motion for Leave to File a Successive Postconviction Petition

¶ 31	In October 2022, defendant filed a second *pro se* motion for leave to file a successive postconviction, which is the subject of this appeal. In his motion, defendant asserted a claim of actual innocence based upon newly discovered evidence. Specifically, defendant alleged he was actually innocent of the charge upon which he was convicted because he acted in self-

defense. In support of his claim, defendant attached an affidavit of Andre Jones, the redacted police statement, and his own affidavit. As to his own affidavit, defendant averred his account of how the shootings transpired. With respect to the affidavit of Andre Jones, Andre Jones averred he was approached by Marcus Dale in late 2021. They spoke about defendant's imprisonment for the murder of McGrone. During that conversation, Dale stated, while he was incarcerated in 2001, Edwin Jones "told him everything regarding the shooting in Brandon Drive." Dale then told Andre Jones about the specifics of Edwin Jones's account. Amongst other things, Edwin Jones allegedly told Dale "that he then saw [defendant] trying to climb a gate that enclosed Brandon Drive so he raised his gun to fire shots towards [defendant], but [defendant] saw him and returned fire back to Edwin." Edwin Jones said "it was then that he realized that [defendant] had accidentally shot [McGrone]." Dale also told Andre Jones "that he had reported to police what Edwin had told him about the shooting" and "was never *** contacted by [defendant's] attorney regarding this statement." Defendant alleged in his motion he did not know about Dale until Andre Jones revealed his conversation with him and there was no indication his counsel knew of Dale.

¶ 32         In December 2022, the trial court denied defendant leave to file a successive postconviction petition, finding he had not presented any newly discovered evidence to support his claim of actual innocence. With respect to the affidavit of Andre Jones, the court found the evidence was not newly discovered because the record showed the defense was aware of both Andre Jones and Dale prior to defendant's trial. With respect to its finding as to Dale, the court relied upon a typed police statement admitted at defendant's trial referencing someone named "Marcus." The court also found the evidence was not newly discovered because the record showed the defense was aware that other witnesses had indicated defendant was shot at and believed he did not intend to shoot McGrone.

¶ 33        In January 2023, defendant filed a motion to reconsider the denial of leave to file a successive postconviction petition, which the trial court later denied.

¶ 34        This appeal followed.

¶ 35                            II. ANALYSIS

¶ 36        On appeal, defendant argues this court should reverse and remand for further proceedings because he sufficiently set forth a claim of actual innocence based upon newly discovered evidence. The State disagrees.

¶ 37        The Post-Conviction Hearing Act (Act) (725 ILCS 122-1 *et seq.* (West 2022)) provides a "statutory procedure by which a defendant can pursue a claim that his conviction or sentence was based on a substantial denial of his constitutional rights." *People v. Clark*, 2023 IL 127273, ¶ 38, 216 N.E.3d 855. The Act contemplates the filing of only one postconviction petition. *Id.* ¶ 39. There are, however, circumstances where a successive postconviction petition may be filed. *People v. Taliani*, 2021 IL 125891, ¶ 55, 174 N.E.3d 503. One such circumstance is where a defendant asserts a claim of actual innocence based upon newly discovered evidence. *People v. Edwards*, 2012 IL 111711, ¶ 23, 969 N.E.2d 829.

¶ 38        A claim of actual innocence based upon newly discovered evidence requires evidence that is "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47, 181 N.E.3d 37. Newly discovered evidence, as it has been defined by our supreme court, "is evidence that was discovered after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id.* Evidence is material and not cumulative where it is relevant and probative of the defendant's innocence and adds to the information presented at trial. *Id.* Finally, the conclusive character of the new evidence, the most important element of a claim

of actual innocence, "refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.*

¶ 39 Where a defendant seeks to file a successive postconviction petition asserting a claim of actual innocence based upon newly discovered evidence, that defendant must first obtain leave of court. *Edwards*, 2012 IL 111711, ¶ 24. The pertinent question when reviewing a request for leave to file such a petition is whether the materials submitted by the defendant "set forth a colorable claim of actual innocence." *Robinson*, 2020 IL 123849, ¶ 50. In considering this question, all well-pleaded allegations not positively rebutted by the record are to be taken as true, and "the court is precluded from making factual and credibility determinations." *Id.* ¶ 45. As our supreme court has explained, "the standard for alleging a colorable claim of actual innocence falls between the first-stage pleading requirement for an initial petition and the second-stage requirement of a substantial showing." *Id.* ¶ 58.

¶ 40 The denial of leave to file a successive postconviction petition alleging actual innocence based upon newly discovered evidence is reviewed *de novo. Id.* ¶ 40. Under *de novo* review, we perform the same analysis a trial court would perform. *People v. McDonald*, 2016 IL 118882, ¶ 32, 77 N.E.3d 26.

¶ 41 In this case, there is no dispute defendant's claim of actual innocence is based upon a viable assertion of self-defense. See *People v. Horton*, 2021 IL App (1st) 180551, ¶ 46, 192 N.E.3d 710 ("Self-defense may serve as the basis for an actual innocence claim because it is a justifying or exonerating circumstance." (Internal quotation marks omitted.)). Instead, the dispute concerns whether the evidence submitted in support of defendant's claim is sufficient to establish a colorable claim of actual innocence. Accordingly, our focus will be on the evidence submitted by defendant.

¶ 42    In considering whether the evidence submitted by defendant is sufficient to establish a colorable claim of actual innocence, we note both he and the State collapse their consideration of the evidence into a single analysis. Following the guidance from our supreme court, we consider each piece of evidence individually to determine whether it is sufficient to establish a colorable claim of actual innocence. See *Robinson*, 2020 IL 123849, ¶¶ 51-83.

¶ 43    We begin with the affidavit of defendant. In his affidavit, defendant sets forth his account of how the shooting transpired. This information was known to defendant before trial. Therefore, the information is not newly discovered, and the affidavit cannot support defendant's claim of actual innocence. See *id.* ¶¶ 51-53.

¶ 44    Next, we consider the redacted police statement. As defendant recognizes, this court has found evidence is not newly discovered where it "was available at a prior posttrial proceeding." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21, 964 N.E.2d 1139; see *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 58, 52 N.E.3d 531 ("Keeping in mind the desire to avoid piecemeal post-conviction litigation, we find it is appropriate, for *res judicata* purposes, to review not only whether the [evidence] could have been discovered at the time of trial, but whether that evidence was available when the defendant filed his previous postconviction pleadings." (Internal citation and quotation marks omitted.)); *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 114, 58 N.E.3d 714 ("Typically, evidence of which the defendant was aware in earlier postconviction proceedings will not be considered newly discovered."). Recently, a panel of the First District found such "preclusion should only apply when the evidence has been previously considered and definitively ruled upon." *People v. Beard*, 2023 IL App (1st) 200106, ¶ 48, 221 N.E.3d 636. Even applying the rule as it is set forth in the recent decision from the First District, we find the redacted police statement is precluded from further consideration—the statement was previously submitted

and found to be not credible, a finding which was not appealed. Therefore, the information is not newly discovered, and the statement cannot support defendant's claim of actual innocence.

¶ 45 Last, we consider the affidavit of Andre Jones. In the affidavit, Andre Jones conveys a conversation he had with Marcus Dale in late 2021 about Edwin Jones's previous account of the 2001 shootings at Brandon Court. During that conversation, Dale conveyed to Andre Jones that Edwin Jones told him "that he *** saw [defendant] trying to climb a gate that enclosed Brandon Drive so he raised his gun to fire shots towards [defendant], but [defendant] saw him and returned fire back to Edwin." Edwin Jones said "it was then that he realized that [defendant] had accidentally shot [McGrone]."

¶ 46 We first observe the trial court's initial grounds for finding the affidavit of Andre Jones was not newly discovered are incorrect. As defendant explains and the State does not dispute, the fact the defense was aware of Andre Jones prior to defendant's trial does not show the information set forth in Andre Jones's affidavit was available to the defense prior to trial. Additionally, the typed police statement relied upon by the court does not show the defense was aware of Dale. While the statement does refer to a person named "Marcus," that reference, considered in context, indicates it was referring to defendant—"Markus."

¶ 47 The trial court also found the affidavit of Andre Jones was not newly discovered because the record showed the defense was aware that other witnesses had indicated defendant was shot at and believed he did not intend to shoot McGrone. While we agree the record shows the defense was aware of this information, the affidavit sets forth additional information the defense was allegedly not aware of—that Edwin Jones had indicated McGrone was shot only after Edwin Jones raised his gun to fire shots at defendant and defendant returned fire at Edwin Jones. There is nothing in the record to suggest the defense was aware of this account from Edwin Jones.

¶ 48    The State suggests the trial court's judgment may nevertheless be affirmed because defendant should have been able to discover Edwin Jones's account sooner. We are not convinced. First, the record does not refute defendant's allegation that the State did not tender the redacted police statement, which he believed referenced a conversation between Edwin Jones and Dale, until 2016. Upon its receipt, defendant, who was imprisoned and did not have the assistance of counsel, had to determine the identity of the person who made the redacted police statement as well as that person's whereabouts. Defendant then would have had to elicit additional information from that person about the statement. We are not convinced, particularly given the State's failure to cite any supporting authority, the delay in uncovering this information amounted to a lack of due diligence. At this stage of the proceedings, we find the affidavit of Andre Jones meets the criteria for newly discovered evidence.

¶ 49    The State also suggests the trial court's judgment may be affirmed because the affidavit from Andre Jones does not present any noncumulative information. We disagree. The affidavit of Andre Jones provides an alleged account of the moments immediately prior to the shooting which resulted in McGrone's death. This information was not before the jury. It is further, although not addressed by the State, relevant and probative of defendant's innocence. At this stage of the proceedings, we find the affidavit of Andre Jones meets the criteria for being evidence that is not cumulative, as well as material.

¶ 50    Finally, the State briefly suggests the trial court's judgment may be affirmed because the affidavit from Andre Jones is not sufficiently conclusive. We disagree. The State asserts the information from the affidavit "merely contradicts" the trial evidence, which it contends "is insufficient to require allowing defendant to file a successive postconviction petition." Our supreme court recently rejected such an inquiry at this stage in the proceedings:

> "We now clarify that the inquiry applicable at the leave-to-file stage of successive proceedings does not focus on whether the new evidence is inconsistent with the evidence presented at trial. Rather, the well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity. In assessing whether a petitioner has satisfied the low threshold applicable to a colorable claim of actual innocence, the court considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial."
>
> *Robinson*, 2020 IL 123849, ¶ 60.

We further note the court held "questions regarding the admissibility and reliability of such evidence are not relevant considerations at the motion for leave to file stage of a successive postconviction proceeding." *Id*. ¶ 81. At this stage of the proceedings, we find the affidavit of Andre Jones is sufficiently conclusive.

¶ 51    In sum, we find the affidavit of Andre Jones is sufficient to support defendant's claim of actual innocence at this stage of the proceedings. We further find, based upon that affidavit and the well-pleaded allegations in defendant's motion, he has set forth a colorable claim of actual innocence. Accordingly, defendant is entitled to leave to file a successive postconviction petition.

¶ 52                                  III. CONCLUSION

¶ 53    We reverse the trial court's judgment and remand for further proceedings.

¶ 54    Reversed and remanded.